John B. Sganga, Jr. (SBN 116211)
john.sganga@knobbe.com
Lynda Zadra-Symes (SBN 156511)
lynda.zadra-symes@knobbe.com
Matthew S. Bellinger (SBN 222228)
matt.bellinger@knobbe.com
Jason A. Champion (SBN 259207)
jason.champion@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
MONSTER ENERGY COMPANY

## IN THE UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>RLED, LLC a California corporation,<br><br>Defendant. | Case No. 5:14-cv-02156<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, TRADEMARK DILUTION, AND UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Monster Energy Company ("Plaintiff" or "MEC") hereby complains of Defendant RLED, LLC ("RLED"), and alleges as follows:

### JURISDICTION AND VENUE

1.     This is an action for 1) trademark infringement and false designation of origin under 15 U.S.C. § 1125(a), 2) trademark infringement under 15 U.S.C. § 1114, 3) federal dilution under 15 U.S.C. § 1125(c), 4)

copyright infringement arising under 17 U.S.C. §§ 501 *et seq.*, 5) dilution under California Business & Professions Code §14247, 6) California common-law unfair competition, and 7) California statutory unfair competition. The Court has original subject matter jurisdiction over the claims that relate to trademark infringement; false designation of origin; and trademark dilution pursuant to 15 U.S.C. §§ 1116 and 1121(a), copyright infringement arising under 17 U.S.C. § 501 *et seq.*, and pursuant to 28 U.S.C. § 1331 and 1338, as these claims arise under the laws of the United States. The Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. § 1338(b) and § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) at least because a substantial portion of the events complained of herein took place in this Judicial District.

**THE PARTIES**

3.      MEC is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Monster Way, Corona, California 92879.

4.      Upon information and belief, RLED is a corporation organized and existing under the laws of the State of California, having a principal place of business at 800 Wheatland Avenue, Sun Valley, California 91352. RLED is subject to the personal jurisdiction of this Court by virtue of its substantial contacts with California, including its participation in the acts and events occurring in this Judicial District described herein.

5.      By committing acts of trademark infringement, false designation of origin, copyright infringement, and unfair competition in this Judicial District, including but not limited to using infringing marks in connection with the sales

and offers for sale of products to customers in this Judicial District and selling into the stream of commerce knowing such products would be sold in California and this district, RLED's acts form a substantial part of the events or omissions giving rise to MEC's claims.

### COMMON ALLEGATIONS FOR ALL CLAIMS OF RELIEF

**A.    MEC's Trademarks and Copyrights**

6.    MEC is a nationwide leader in the business of developing, marketing, selling, and distributing beverages, including energy drinks.

7.    In 2002, long before Defendant's acts described herein, MEC launched its MONSTER ENERGY® drink brand, bearing its now-famous mark ("Claw Icon Mark"), MONSTER™ Mark, and MONSTER ENERGY® Mark.

8.    MEC is also the owner of numerous trademark registrations for marks that incorporate its famous Claw Icon Mark, and many of which also include its famous MONSTER™ Mark and MONSTER ENERGY® Mark, including the following U.S. Trademark Registrations:

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|------|----------|----------------|------------|-----------|
|  | 2,903,214 | Drinks, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated and non-carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 11/16/2004 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
|  | 3,434,821 | Nutritional supplements | 09/07/2007 | 05/27/2008 |
|  | 3,434,822 | Non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy | 09/07/2007 | 05/27/2008 |
|  | 3,963,668 | Stickers; sticker kits comprising stickers and decals; decals; posters | 07/28/2010 | 05/17/2011 |
|  | 3,963,669 | All-purpose sport bags; all-purpose carrying bags; backpacks; duffel bags | 07/28/2010 | 05/17/2011 |
|  | 4,011,301 | Sports helmets; video recordings featuring sports, extreme sports, and motor sports | 07/27/2010 | 08/16/2011 |
|  | 4,051,650 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely hats and beanies | 07/28/2010 | 11/08/2011 |
|  | 4,332,062 | Silicone wrist bands; Silicone bracelets; Jewelry, namely, bracelets and wristbands | 10/05/2012 | 05/07/2013 |
|  | 3,134,841 | Beverages, namely, carbonated soft drinks, carbonated soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy and sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 08/29/2006 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | 3,908,600 | Stickers; sticker kits comprising stickers and decals; decals | 04/02/2009 | 01/18/2011 |
| | 3,908,601 | Clothing, namely, t-shirts, hooded shirts and hooded sweatshirts, sweat shirts, jackets, pants, bandanas, sweat bands and gloves; headgear, namely, hats and beanies | 04/02/2009 | 01/18/2011 |
| | 3,914,828 | Sports helmets | 04/02/2009 | 02/01/2011 |
| | 3,923,683 | All purpose sport bags; All-purpose carrying bags; Backpacks; Duffle bags | 04/02/2009 | 02/22/2011 |

9.      MEC is also the owner of numerous other trademark registrations for its famous MONSTER™ Mark and MONSTER ENERGY® Mark (the "Monster Marks"), including the following U.S. Trademark Registrations:

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| MONSTER ENERGY | 3,044,315 | Nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/23/2003 | 01/17/2006 |
| M MONSTER ENERGY | 3,044,314 | Nutritional supplements in liquid form, but excluding | 05/23/2003 | 01/17/2006 |

-5-

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | | |
| MONSTERENERGY | 3,057,061 | Fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 04/18/2002 | 02/07/2006 |
| M MONSTER ENERGY | 3,134,842 | Beverages, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 05/07/2003 | 08/29/2006 |
| MONSTER ENERGY | 4,036,680 | Nutritional supplements in liquid form | 09/11/2007 | 10/11/2011 |
| MONSTER ENERGY | 4,036,681 | Non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy | 09/11/2007 | 10/11/2011 |
| MONSTER REHAB | 4,111,964 | Ready to drink tea, iced tea and tea based beverages; ready to drink flavored tea, iced tea and tea based beverages | 08/24/2011 | 03/13/2012 |
| MONSTER REHAB | 4,129,288 | Nutritional supplements in liquid form Beverages, namely, non-alcoholic non-carbonated drinks enhanced with vitamins, | 07/06/2010 | 04/17/2012 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|---|---|---|---|---|
| | | minerals, nutrients, proteins, amino acids and/or herbs; non-carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf-stable; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | | |
| MONSTER CUBA-LIMA | 4,269,880 | Nutritional supplements in liquid form<br>Non-alcoholic beverages, namely, energy drinks, energy drinks flavored with juice, sports drinks, all enhanced with vitamins, minerals, nutrients, proteins, amino acids, and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 06/14/2012 | 01/01/2013 |
| MUSCLE MONSTER | 4,376,796 | Nutritional supplements in liquid form<br>Beverages, namely, soft drinks; non-alcoholic and non-carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; non-carbonated energy or sports drinks; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 07/02/2010 | 07/30/2013 |
| MUSCLE MONSTER | 4,451,535 | Vitamin fortified beverages<br>Dairy-based beverages; dairy-based energy shakes; energy shakes; coffee energy shakes; chocolate energy shakes<br>Ready to drink coffee based beverages; ready to drink chocolate-based beverages | 07/10/2013 | 12/17/2013 |

| MARK | REG. NO. | GOODS/SERVICES | DATE FILED | REG. DATE |
|------|----------|----------------|------------|-----------|
| MONSTER ENERGY ULTRA RED | 4,532,292 | Nutritional supplements in liquid form ; vitamin fortified beverages Non-alcoholic beverages, namely, energy drinks, soft drinks, sports drinks, all enhanced with vitamins, minerals, nutrients, amino acids and/or herbs; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 06/13/2013 | 05/20/2014 |
| MONSTER ENERGY ULTRA BLUE | 4,534,414 | Nutritional supplements in liquid form; vitamin fortified beverages Non-alcoholic beverages, namely, energy drinks, soft drinks, sports drinks, all enhanced with vitamins, minerals, nutrients, amino acids and/or herbs; all the foregoing goods exclude perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 01/02/2013 | 05/20/2014 |

10.     Attached hereto as Exhibits A1-A26 are true and correct copies of MEC's trademark registrations identified in paragraphs 8-9 of this Complaint, which are hereby incorporated by reference.  Collectively, those registrations and trademarks referenced in paragraphs 8-9 of this Complaint are referred to as the "Asserted Marks."

11.     Pursuant to 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 2,903,214, 3,134,841, 3,434,822, 3,434,821, 3,044,315, 3,044,314, 3,057,061, and 3,134,842 are now incontestable.

12.     In addition, MEC is the owner of valid copyright registrations for its Claw Icon and can art and packaging designs featuring its Claw Icon Mark, including at least U.S. Copyright Registration Nos. VA 1-727-577, VA 1-737-

654, VA 1-749-215, and VA 1-789-900.

13. Attached hereto as Exhibits B through E are true and correct copies of MEC's copyright registrations. Collectively, those registrations referenced in paragraph 12 of this Complaint are referred to as the "Copyrighted Designs."

14. MEC's successful line of MONSTER™ drinks has now grown to include numerous other well-known products, including, but not limited to, original Monster Energy® and Lo-Carb Monster Energy®; Monster™ Assault®; Juice Monster™ Khaos®; Juice Monster™ Ripper™, Ubermonster®; Monster Energy® Import and Monster Energy® Import Light; Punch Monster®; Monster Energy® Absolutely Zero; Monster Energy® Zero Ultra; Monster Energy® Ultra Blue; Monster Energy® Ultra Red; Monster Cuba-Lima®; Monster Rehab®, which is a line of non-carbonated energy drinks, which includes Monster Energy Company's Monster Rehab® Rojo Tea + Energy, Monster Rehab® Green Tea + Energy, Monster Rehab® Tea + Orangeade + Energy, Monster Rehab® Tea + Pink Lemonade + Energy, and Monster Rehab® Tea + Lemonade + Energy products; Java Monster®, which is a line of dairy based coffee plus energy drinks; Muscle Monster®, which is a line of energy shakes; Monster Energy Extra Strength Nitrous Technology®, which is a line of energy drinks with a blend of nitrous oxide and carbon dioxide to create a smoother energy drink; and ⚇® Monster Energy® which is a five ounce super concentrated energy drink, among others (referred to collectively as "MONSTER™ line of energy drinks").

15. Representative images showing some of the products in MEC's MONSTER family of products are shown below:

/ / /

/ / /

/ / /

-9-



16.    As shown in the images above, the containers and packaging of MEC's MONSTER™ line of energy drinks are prominently marked with MEC's Claw Icon Mark and Monster Marks.

17.    MEC's Claw Icon Mark and Monster Marks are the subject of

substantial and continuous marketing and promotion by MEC in connection with its MONSTER™ line of energy drinks and MONSTER™ apparel and accessories.  Since 2002, MEC has spent approximately $3 billion dollars on promoting and marketing its MONSTER™ brand.

18.    MEC has and continues to widely market and promote its Claw Icon Mark and Monster Marks in the industry and to consumers by displaying the Claw Icon Mark and Monster Marks on more than 10 billion cans sold worldwide to date.  MEC's promotional efforts also include – by way of example but not limitation – widespread distribution of promotional and point of sale materials, product samplings, apparel and merchandise bearing the Claw Icon Mark and Monster Marks, in magazines and other industry publications, on the MONSTER ENERGY® website and other Internet websites, attendance at trade shows, and sponsorship of concert tours, live events, athletes, athletic teams, and athletic competitions around the world.

19.    MEC also sponsors numerous athletic events in connection with its MONSTER™ brand drinks, apparel, and accessories bearing the Claw Icon Mark and/or Monster Marks.  For example, MEC sponsors or has sponsored numerous sporting events, including the MONSTER ENERGY® Billabong XXL Awards from 2005 to 2012, the MONSTER ENERGY® AMA Supercross Series, Road Racing World Championship Grand Prix ("MotoGP") races, MX2 FIM Motocross World Championships, the Motocross of Nations, the MX3 FIM Motocross World Championship, the FIM MX Junior World Championship, the UEM EMX2 European Motocross Championship, and the X Games.

20.    In addition to the sporting events above, MEC also sponsors more than 200 athletes or athletic teams who compete in a wide-variety of sports, including Formula 1, NASCAR racing, motocross, MotoGP, AMA Superbike, Supercross, World Superbike, surfing, skateboarding, wakeboarding, skiing, snowboarding, BMX, mountain biking, snowmobile racing, off-road racing, and

off-road truck racing.  Many of the events that the MEC-sponsored athletes and athletic teams compete in are broadcast nationally on television, and all of them prominently display the Claw Icon Mark and Monster Marks.

21.    MEC's MONSTER$^{TM}$ family of products has achieved substantial commercial success.  Worldwide retail sales now exceed 2 billion cans per year with estimated retail sales exceeding US$5 billion per year worldwide.  MEC's MONSTER ENERGY® brand has established itself as the best-selling energy drink brand in the United States.

22.    As a result of MEC's substantial use and promotion of its Claw Icon Mark and Monster Marks, the marks have acquired great value as specific identifiers of MEC's products and serve to identify and distinguish MEC's MONSTER$^{TM}$ products from those of others.  Customers in this judicial district and elsewhere readily recognize MEC's Claw Icon Mark and Monster Marks as distinctive designations of the origin of MEC's MONSTER™ and MONSTER ENERGY® brand drinks, accessories, clothing products, sports bags and backpacks, sports gear and other products and promotional items.  The Claw Icon Mark and Monster Marks are intellectual property assets of enormous value as symbols of MEC and its quality products, reputation, and goodwill.

**B.    RLED's Infringing Activities**

23.    On information and belief, RLED is engaged in the business of developing, marketing, selling, and distributing energy drinks and related goods, under the name Roaring Lion Energy Drink. RLED also owns and operates the website <http://roaringlion.com> and maintains a variety of social media accounts including Facebook, Instagram, Twitter, Tumblr, and LinkedIn.

24.    Without permission or consent from MEC, RLED has sold, and is offering for sale, and selling energy drinks and related goods bearing claw logos that are confusingly similar to MEC's Claw Icon Mark and/or contain substantial similarities to MEC's Copyrighted Designs (the "Accused

Products"). Examples of some of the Accused Products and promotional materials for the Accused Products are shown below:



25.    Specifically, RLED is using claw logos in connection with its energy drink products that are imitations of MEC's Claw Icon Mark and Copyrighted Designs. An example of one of RLED's energy drink products bearing a claw logo is shown below:



-13-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

26.     As shown in the examples below, RLED is also using claw logos that appear to be substantially similar imitations of MEC's Claw Icon Mark and Copyrighted Designs on its promotional materials for the Accused Products:





27.     In addition to adopting claw logos that are confusingly similar to MEC's Claw Icon Mark and and/or substantially similar to MEC's Copyrighted Designs, RLED also incorporated MEC's Asserted Marks in connection with RLED's marketing materials for the Accused Products. For example, as shown below, RLED's website displays MEC's Claw Icon Mark and RLED's promotional mailers and social media accounts also rely on MEC's MONSTER™ and MONSTER ENERGY® marks in promoting RLED's energy



1
2
3
4
5
6
7
8
9
10
11
12



13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11
12
13
14



15    28.    On information and belief, RLED distributes the Accused Products

16    to retail outlets, including convenience stores.

17    29.    RLED's Accused Products are energy drinks, travel in the identical

18    channels of trades, and are sold to identical consumers as MEC's MONSTER™

19    line of energy drinks.

20    30.    RLED is clearly aware of MEC and its valuable trademarks and

21    Copyrighted Designs as evidenced by its display of MEC's Claw Icon Mark on

22    its website. Not only does RLED use the Asserted Marks in connection with its

23    website and flyers, RLED also closely mimics the style and distinctive elements

24    of MEC's Asserted Marks on its promotional and point of sale materials,

25    product samplings, apparel and merchandise to promote its competing energy

26    drink, as shown below:

27
28










31.     Upon information and belief, RLED has taken systematic steps in an attempt to falsely associate its Accused Products with MEC. RLED has attempted to capitalize on MEC's valuable reputation and customer goodwill in its MONSTER™ family of products by using the Asserted Marks on its websites, using a confusingly similar claw logo and mimicking MEC's

promotional materials, sponsorships, and event presence in a manner that is likely to cause consumers and potential customers to believe that RLED's Accused Products are associated with MEC or MEC's MONSTER™ family of products, when they are not.

32.    Without permission or consent from MEC, RLED has infringed MEC's Asserted Marks in interstate commerce by making, using, promoting, advertising, selling, and/or offering to sell the Accused Products using marks that are confusingly similar to MEC's Asserted Marks.

33.    Upon information and belief, RLED's actions alleged herein are intended to cause confusion, mistake, or deception as to the source of RLED's Accused Products.

34.    Upon information and belief, RLED's actions alleged herein are intended to cause consumers and potential customers to believe that RLED's business and the goods and services that RLED offers are associated with MEC or MEC's MONSTER™ family of products, when they are not.

35.    By virtue of the acts complained of herein, RLED has created a likelihood of injury to MEC's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of MEC's goods and RLED's Accused Products, and has otherwise competed unfairly with MEC by unlawfully trading on and using MEC's Asserted Marks without MEC's permission or consent.

36.    At no time has MEC ever given RLED license, permission, or authority to reproduce, prepare derivative works, distribute copies, or to display MEC's Copyrighted Designs.

37.    Upon information and belief, RLED has unlawfully copied protected elements of MEC's Copyrighted Designs.

38.    Upon information and belief, RLED had access to MEC's Copyrighted Designs at least because MEC displays its Copyrighted Designs on

its packaging, its widespread promotional materials, and its publicly-available website.

39. Without permission of MEC, RLED is distributing, displaying, and reproducing a substantially similar design bearing protected elements of MEC's Copyrighted Designs.

40. In addition, without permission of MEC, RLED has directly copied MEC's Copyrighted Claw Icon and displayed it on its website and social media sites.

41. Upon information and belief, RLED's acts complained of herein are willful and deliberate.

42. RLED's acts complained of herein have caused damage to MEC in an amount to be determined at trial, and such damages will continue to increase unless RLED is enjoined from its wrongful acts and infringement.

43. RLED's acts complained of herein have caused MEC to suffer irreparable injury to its business. MEC will suffer substantial loss of goodwill and reputation unless and until RLED is preliminarily and permanently enjoined from the wrongful acts complained of herein.

**FIRST CLAIM FOR RELIEF**

**(Trademark Infringement and False Designation of Origin Under 15 U.S.C. § 1125(a))**

44. MEC hereby repeats, realleges, and incorporates by reference paragraphs 1-43 of this Complaint as though fully set forth herein.

45. This is an action for trademark infringement and false designation of origin arising under 15 U.S.C. § 1125(a).

46. As a result of the widespread use and promotion of MEC's Asserted Marks, the Asserted Marks have acquired secondary meaning to consumers and potential customers, in that consumers and potential customers have come to associate the Asserted Marks with MEC.

47.     RLED has infringed MEC's Asserted Marks and created a false designation of origin, by using in commerce, without MEC's permission, claw logos confusingly similar to MEC's Asserted Marks in connection with the advertisement, offering for sale, and/or sale of the Accused Products.

48.     RLED's actions are likely to cause confusion and mistake, or to deceive as to the affiliation, connection, or association of MEC with RLED, and/or as to the origin, sponsorship, or approval of RLED's goods or commercial activities, in violation of 15 U.S.C. § 1125(a).

49.     Upon information and belief, RLED did so with the intent to trade upon MEC's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that RLED's Accused Products are associated with, sponsored by or approved by MEC, when they are not.

50.     Upon information and belief RLED had actual knowledge of MEC's ownership and prior use of the Asserted Marks, and without the consent of MEC, willfully violated 15 U.S.C. § 1125(a).

51.     RLED, by its actions, has damaged MEC in an amount to be determined at trial.

52.     RLED, by its actions, has irreparably injured MEC. Such irreparable injury will continue unless RLED is preliminarily and permanently enjoined by this Court from further violation of MEC's rights, for which MEC has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

### (Trademark Infringement Under 15 U.S.C. § 1114)

53.     MEC hereby repeats, realleges, and incorporates by reference paragraphs 1-52 of this Complaint as though fully set forth herein.

54.     This is a claim for trademark infringement arising under 15 U.S.C. § 1114.

55.    MEC owns valid and enforceable registered trademarks for its Asserted Marks, including at least the registrations listed in Paragraphs 8-9 above.

56.    RLED has used in commerce, without permission from MEC, colorable imitations, and/or confusingly similar marks to MEC's marks that are the subject of at least MEC's U.S. Trademark Registration Nos. 2,903,214; 3,434,821; and 3,434,822 in connection with the distributing, selling, offering for sale, advertising, and/or promoting of the Accused Products. Such use is likely to cause confusion or mistake, or to deceive.

57.    Upon information and belief, the activities of RLED complained of herein constitute willful and intentional infringements of MEC's registered marks, and RLED did so with the intent to trade upon MEC's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that RLED's Accused Products are associated with, sponsored by, originated from, or are approved by, MEC, when they are not.

58.    Upon information and belief, RLED had actual knowledge of MEC's ownership and prior use of the Asserted Marks, and has willfully violated 15 U.S.C. § 1114.

59.    RLED, by its actions, has damaged MEC in an amount to be determined at trial.

60.    RLED, by its actions, has irreparably injured MEC. Such irreparable injury will continue unless RLED is preliminarily and permanently enjoined by this Court from further violation of MEC's rights, for which MEC has no adequate remedy at law.

/ / /

/ / /

/ / /

-22-

**THIRD CLAIM FOR RELIEF**

**(Federal Dilution of the Asserted Marks Under 15 U.S.C. § 1125(c))**

61.    MEC hereby repeats, realleges, and incorporates by reference paragraphs 1-60 of this Complaint as though fully set forth herein.

62.    This is a claim for federal trademark dilution arising under 15 U.S.C. § 1125(c).

63.    Products sold under MEC's Claw Icon Mark have been widely advertised, promoted, and distributed to the purchasing public throughout the United States and the world. By virtue of the wide renown acquired by MEC's Claw Icon Mark, coupled with the national and international distribution and extensive sale of various products distributed under the Claw Icon Mark, the Claw Icon Mark is famous and became so prior to RLED's acts complained of herein.

64.    RLED's unauthorized and commercial use of MEC's Claw Icon Mark connection with the advertisement, offering for sale and sale of RLED's Accused Products has caused and is likely to continue to cause dilution of the distinctive quality of MEC's famous Claw Icon Mark.

65.    RLED's acts are likely to tarnish, injure, or trade upon MEC's business, reputation or goodwill, and to deprive MEC of the ability to control the use of its Claw Icon Mark and quality of products associated herewith.

66.    Upon information and belief, RLED's dilution has been willful and deliberate.

67.    RLED, by its actions, has damaged MEC in an amount to be determined at trial.

68.    RLED, by its actions, has irreparably injured MEC. Such irreparable injury will continue unless RLED is preliminarily and permanently enjoined by this Court from further violation of MEC's rights, for which MEC has no adequate remedy at law.

# FOURTH CLAIM FOR RELIEF

## (Copyright Infringement Under 17 U.S.C. § 501 *et seq.*)

69.    MEC hereby repeats, realleges, and incorporates by reference paragraphs 1-68 of this Complaint as though fully set forth herein.

70.    This is an action for copyright infringement under the Copyright Act, 17 U.S.C. §§ 501, *et seq*.

71.    MEC is the owner of valid and enforceable copyrights in the Claw Icon Mark, can art and packaging, which contain copyrightable subject matter under 17 U.S.C. §§ 101, *et seq.* ("Copyrighted Designs").

72.    MEC has complied with the registration requirements of 17 U.S.C. § 411(a) for the Copyrighted Designs, and has obtained Copyright Registration Nos. VA 1-727-577, VA 1-737-654, VA 1-749-215 and VA 1-789-900.

73.    RLED's deliberate copying of MEC's Copyrighted Designs infringes and continues to infringe MEC's Copyrighted Designs in violation of 17 U.S.C. § 501(a).  RLED is directly infringing on MEC's exclusive right to reproduce copies, make derivative works, distribute copies, and display its Copyrighted Designs under 17 U.S.C. §§ 106(1)–(3), (5).

74.    Upon information and belief, RLED's infringement has been willful and deliberate.

75.    RLED, by its actions, has damaged MEC in an amount to be determined at trial.

76.    RLED, by its actions, has irreparably injured MEC.  Such irreparable injury will continue unless RLED is preliminarily and permanently enjoined by this Court from further violation of MEC's rights, for which MEC has no adequate remedy at law.

/ / /

/ / /

/ / /

**FIFTH CLAIM FOR RELIEF**

**(Dilution Under California Business & Professions Code § 14247)**

77.     MEC hereby repeats, realleges, and incorporates by reference paragraphs 1-76 of this Complaint as though fully set forth herein.

78.     This is an action for dilution under California Business & Professions Code § 14247.

79.     MEC's Claw Icon Mark is famous and distinctive, and became famous prior to the acts of RLED complained of herein.

80.     RLED's unauthorized commercial use of MEC's Claw Icon Mark in connection with the advertisement, offering for sale/ and/or sale of the Accused Products is likely to cause dilution of the distinctive quality of the famous Claw Icon Mark.

81.     RLED's aforementioned acts are likely to blur, tarnish, injure or trade upon MEC's business reputation or goodwill, and to deprive MEC of the ability to control its Claw Icon Mark.

82.     RLED, by its actions, has damaged MEC in an amount to be determined at trial.

83.     RLED, by its actions, has irreparably injured MEC. Such irreparable injury will continue unless RLED is preliminarily and permanently enjoined by this Court from further violation of MEC's rights, for which MEC has no adequate remedy at law.

**SIXTH CLAIM FOR RELIEF**

**(California Common-Law Unfair Competition)**

84.     MEC hereby repeats, realleges, and incorporates by reference paragraphs 1-83 of this Complaint as though fully set forth herein.

85.     This is a claim for unfair competition arising under California common law.

/ / /

86.    RLED's acts complained of herein constitute trademark infringement and unfair competition under California common law.

87.    By virtue of the acts complained of herein, RLED has willfully and intentionally caused a likelihood of confusion among the purchasing public in this Judicial District and elsewhere, thereby unfairly competing with MEC in violation of the common law of the state of California.

88.    RLED, by its actions, has damaged MEC in an amount to be determined at trial.

89.    RLED, by its actions, has irreparably injured MEC. Such irreparable injury will continue unless RLED is preliminarily and permanently enjoined by this Court from further violation of MEC's rights, for which MEC has no adequate remedy at law.

90.    RLED's willful acts of unfair competition under California common law constitute fraud, oppression and malice. Accordingly, MEC is entitled to exemplary damages pursuant to Cal. Civ. Code Section § 3294(a).

### SEVENTH CLAIM FOR RELIEF
### (California Statutory Unfair Competition)

91.    MEC hereby repeats, realleges, and incorporates by reference paragraphs 1-90 of this Complaint as though fully set forth herein.

92.    This is a claim for unfair competition, arising under California Business and Professions Code § 17200, *et seq.* and California common law.

93.    RLED's acts complained of herein, constitute unfair competition with MEC under California Business and Professions Code § 17200, *et seq.* RLED's acts constitute unlawful, unfair, malicious or fraudulent business practices.

/ / /

/ / /

/ / /

94.   RLED, by its actions, has irreparably injured MEC. Such irreparable injury will continue unless RLED is preliminarily and permanently enjoined by this Court from further violation of MEC's rights, for which MEC has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, MEC prays for judgment against RLED as follows:

A.   That the Court render a final judgment in favor of MEC and against RLED on all claims for relief alleged herein;

B.   That the Court render a final judgment that RLED has violated the provisions of 15 U.S.C. § 1125(a) by willfully infringing MEC's Asserted Marks and by using a false designation of origin, false description or false representation through the marketing, sale and promotion of RLED's Accused Products;

C.   That the Court render a final judgment that RLED has willfully violated the provisions of 15 U.S.C. § 1114 by infringing MEC's trademark rights in at least the marks that are the subject of U.S. Trademark Registration Nos. 2,903,214, 3,434,821, and 3,434,822.

D.   That the Court render a final judgment that RLED has willfully violated the provisions of 15 U.S.C. § 1125(c) by diluting MEC's famous federally-registered Claw Icon Mark;

E.   That the Court render a final judgment declaring that RLED has violated and willfully violated 17 U.S.C. § 501(a) by infringing MEC's Copyrighted Designs;

F.   That the Court render a final judgment declaring that RLED has violated and willfully violated the provisions of California Business & Professions Code §14247 by diluting MEC's famous Claw Icon Mark;

G.   That the Court render a final judgment that RLED has unfairly competed with MEC in violation of California common law;

H.     That the Court render a final judgment that RLED has unfairly competed with MEC in violation of California Business and Professions Code § 17200, *et seq.*;

I.     That RLED, its agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise, be forthwith preliminarily and permanently enjoined from:

i.     using RLED's claw logos or MEC's Asserted Marks and/or Copyrighted Designs, in connection with RLED's Accused Products, using the Asserted Marks and/or Copyrighted Designs in advertising or promoting RLED's Accused Products, and/or using confusingly similar variations of the Asserted Marks and/or Copyrighted Designs in any manner that is likely to create the impression that RLED's Accused Products originate from MEC, are endorsed by MEC, or are connected in any way with MEC;

ii.     manufacturing, distributing, shipping, importing, reproducing, displaying, advertising, marketing, promoting, transferring, selling, and/or offering to sell any products bearing RLED's claw logos and/or MEC's Asserted Marks and/or any confusingly similar marks;

iii.     manufacturing, distributing, shipping, importing, reproducing, displaying, advertising, marketing, promoting, transferring, selling, and/or offering to sell any unauthorized products bearing or using MEC's Copyrighted Designs or any design substantially similar thereto;

iv.     without permission or authorization from MEC, copying, reproducing, distributing, displaying, creating derivative works of MEC's Copyrighted Designs and/or importing, manufacturing, or producing any products bearing copies or derivative works of MEC's Copyrighted Designs or any design substantially similar thereto;

-28-

v.      filing any applications for registration of any trademarks, trade dress, copyrighted works, or designs confusingly similar to MEC's Asserted Marks and/or substantially similar to MEC's Copyrighted Designs;

vi.      otherwise infringing the Asserted Marks and Copyrighted Designs, or otherwise diluting MEC's Claw Icon Mark, Monster Marks, or any of MEC's other trademarks;

vii.      falsely designating the origin of RLED's Accused Products;

viii.      unfairly competing with MEC in any manner whatsoever; and

ix.      causing a likelihood of confusion or injury to MEC's business reputation;

J.      That RLED be directed to file with this Court and serve on MEC within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which it has complied with the injunction pursuant to 15 U.S.C. § 1116.

K.      That RLED be required to account to MEC for any and all profits derived by RLED and all damages sustained by MEC by virtue of RLED's acts complained of herein;

L.      That RLED be ordered to pay over to MEC all damages which MEC has sustained as a consequence of the acts complained of herein, subject to proof at trial, together with prejudgment and post-judgment interest;

M.      That this case be deemed exceptional and the amount of the damages be trebled and that the amount of profits be increased by as many times as the Court deems appropriate, pursuant to 15 U.S.C. § 1117;

N.      That MEC be awarded its damages and RLED's profits under 17 U.S.C. § 504, as well as enhanced damages pursuant to 17 U.S.C. § 504. Alternatively, if MEC elects, that MEC be awarded statutory damages pursuant

to 17 U.S.C. § 504;

     O.    That MEC be awarded exemplary damages from RLED pursuant to Cal. Civ. Code. § 3294;

     P.    That RLED's actions be deemed willful;

     Q.    That an award of reasonable costs, expenses, and attorneys' fees be awarded to MEC pursuant to at least 15 U.S.C. § 1117 and 17 U.S.C. § 504;

     R.    That RLED be required to deliver and destroy all devices, literature, advertising, goods and other materials bearing the infringing claw logos and marks pursuant to 15 U.S.C. § 1118 and 17 U.S.C. § 503;

     S.    That MEC be awarded restitution and disgorgement; and

     T.    That MEC be awarded such other and further relief as this Court may deem just.

KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated: October 20, 2014    By:  */s/Matthew S. Bellinger*
                        John B. Sganga, Jr.
                        Lynda J. Zadra-Symes
                        Matthew S. Bellinger
                        Jason A. Champion

                        Attorneys for Plaintiff,
                        MONSTER ENERGY COMPANY

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff MEC hereby demands a trial by jury on all issues so triable.

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  October 20, 2014      By:  */s/Matthew S. Bellinger*
John B. Sganga, Jr.
Lynda J. Zadra-Symes
Matthew S. Bellinger
Jason A Champion

Attorneys for Plaintiff,
MONSTER ENERGY COMPANY